UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-128 (DWF/DLM)

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JASON LEE,

      Defendant.

**GOVERNMENT'S POSITION WITH RESPECT TO SENTENCING**

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Hillary A. Taylor, Assistant United States Attorney, hereby respectfully submits its memorandum in support of its position with respect to the sentencing of Defendant Jason Lee.

In September 2021, Jason Lee confessed to police that he recorded himself sexually assaulting 4-year-old Minor Victim 1 in 2019. Police searched Mr. Lee's devices and found approximately 500-600 child pornography images and videos, including two self-produced videos, one of which depicts Lee touching Minor Victim 1's vagina over and under her clothes. Given the circumstances surrounding Mr. Lee's offense conduct, for the reasons set forth below, the Government requests that the Court impose a sentence of 180 months' imprisonment and a 10-year term of supervised release. Such a sentence is sufficient, but not greater than necessary, to address the seriousness of the offense, the history and characteristics of the defendant, the need for general and specific deterrence, and the defendant's need for appropriate mental health treatment.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

      A.      **The Instant Offense.**

In September 2021, Manitowoc, Wisconsin law enforcement started a child exploitation investigation because of a CyberTip from the National Center for Missing and Exploited Children (NCMEC). (PSR ¶ 9.) The CyberTip detailed that someone at Mr. Lee's residence/IP address had uploaded a child pornography video to Facebook. (*Id.* at ¶ 9.) Further investigation determined that Mr. Lee was the user of the subject Facebook account. (*Id.*)

On September 22, 2021, law enforcement executed a search warrant at Mr. Lee's residence, during which they seized his electronic devices. (*Id.* at ¶ 10.) Upon review of his devices, law enforcement discovered that Mr. Lee was in possession of approximately 500-600 child pornography images and videos. (*Id.*) That same day, Mr. Lee was interviewed by law enforcement about the CyberTip and child pornography found on his Samsung Galaxy cell phone. (*Id.* at ¶¶ 10-11.) During the interview, Mr. Lee admitted to collecting and looking at child pornography. (*Id.* at ¶ 11.) He described "friending" or adding Facebook users from third-world countries to obtain child sexual abuse images, and further detailed sharing these abuse images in group chats (although he attempted to retract that latter statement). (*Id.*) During this interview, Mr. Lee lied to police and denied ever having sexual contact with a child. (*Id.*) Afterwards, Mr. Lee was arrested and charged in Manitowoc County with multiple counts of possession of child pornography and child sexual exploitation. Mr. Lee was released from custody on bail within 24 hours. (*Id.*)

The next day on September 23, 2021, a Manitowoc detective was reviewing files from Mr. Lee's cell phone and noticed child pornography videos that had been recorded by him depicting him abusing minor victims. (*Id.* at ¶¶ 12-14.) Law enforcement quickly located Mr. Lee after reviewing these videos and interviewed him a second time. (*Id.* at ¶ 12.) Mr. Lee was confronted about his lie that he never had sexual contact with a child. Lee admitted to recording himself in two separate videos sexually abusing two different girls when he was in Minnesota visiting family around 2019-2020, one of whom was Minor Victim 1.[1] (*Id.*)

Mr. Lee admits that he made the self-produced child pornography video in Count 1 on June 7, 2019, in Minnesota. (*Id.* at ¶ 13; *see also* ECF No. 27, ¶ 2.) The video is about three and a half minutes in length. Mr. Lee starts the video by holding Minor Victim 1 on his lap. (PSR ¶ 13.) The focus of the video is Mr. Lee touching Minor Victim 1's vaginal area outside and inside her pants with both of his hands. For example, one point in the video, Mr. Lee asks Minor Victim 1, "Do you like it when I touch there?" (*Id.*) As he says this, he begins touching her vaginal area with his left hand on the outside of her pants. After this Mr. Lee rubs her vaginal area and stares into the cell phone camera. Later in the video, Mr. Lee asks Minor Victim, "Can I see your tongue?" (*Id.*) After which he begins to manipulate and touch her tongue with his fingers. Further in the video, Mr. Lee lifts the

---

[1] The second video was recorded on or about November 17, 2020. (*Id.* at ¶ 14.) The video depicts a female toddler (Minor Victim 2) lying on a bed sleeping on her back. Mr. Lee's hand appears and touches the toddler over and under her pants in her vaginal area. While Mr. Lee has advised law enforcement that Minor Victim 2 was his "cousin's daughter," law enforcement has not been able to identify Minor Victim 2. (*Id.*)

3

waistband of Minor Victim 1's pants with his right hand and places his left hand down the front of her pants, with skin-to-skin contact he begins to touch and rub her vagina with his left hand/fingers. (*Id.*) Then he asked the young girl if she wanted to lay down with him, after which he stands up and carries Minor Victim 1 to a different part of the room. (*Id.*) He then places the recording device on the floor and tells the child to lay down. She lays down on her stomach facing the camera. Lee lays on top of her and begins rubbing his clothed groin on her back and buttocks. (*Id.*) The video ends abruptly when Mr. Lee is interrupted by a sound behind them and gets up and grabs his phone.

After this, law enforcement met with Minor Victim 1 and her family in St. Paul. On April 1, 2022, Minor Victim 1 was forensically interviewed. During her interview, Minor Victim 1 was shown two images taken from the video of Mr. Lee assaulting her. (*Id.*) When asked what was happening in an image, Minor Victim 1 said the defendant was "touching my noki and he's not supposed to touch." (Minor Victim 1 spoke in English but used Hmong words for body parts. "Noki" was previously identified by Minor Victim 1 on an anatomical drawing of a female to be the vagina.) (*Id.*) Several times during the interview, Minor Victim 1 stated she did not feel safe because she was worried about this happening again.

**B.    The Charge, the Plea Agreement, and the Guidelines Calculations.**

On April 13, 2023, Mr. Lee was charged with one count of Attempted Production and Production of Child Pornography in violation of 18 U.S.C. §§ 2251(a) and 2251(e).

(ECF No. 1.) On July 17, 2023, Mr. Lee pled guilty pursuant to a plea agreement. (ECF Nos. 26-27.)

The final Presentence Report was issued on October 10, 2023. (ECF No. 33.) The advisory sentencing guidelines range in the PSR is higher than what was contemplated by the parties in the plea agreement. The PSR applies a two-level enhancement due to the defendant's familial connection with Minor Victim 1 that was not agreed to by the parties in the plea agreement. (PSR ¶ 22; *see also id.* at PSR Addendum, A.1-2.) The PSR finds a total adjusted offense level of 37, a criminal history category of I, and a Guidelines imprisonment range of 210-262 months. (*Id.* at ¶ 64.) While the Government agrees with the PSR writer's analysis, the Government objects to the additional enhancement consistent with its obligations under the plea agreement, as the PSR differs from the parties' stipulations in the plea agreement regarding the application of specific offense characteristics. Beyond this, the Government agrees with the Guidelines calculations and conclusions detailed in the Presentence Report.

While Mr. Lee agreed to mandatory restitution in his plea (ECF No. 27, ¶ 13), Minor Victim 1, through her guardian, has decided not to request restitution. Thus, there are no outstanding restitution issues to be resolved. Additionally, the parties recommend that the sentence imposed in this case should run concurrent with Mr. Lee's Wisconsin state court sentence. *See id.* at ¶ 11; *see also State of Wisconsin v. Jason Lee*, Case No. 2021CF000795 (Wisc. Dist. Ct. June 16, 2022) (serving five years' imprisonment followed by 10 years' supervised release).

## II. THE GOVERNMENT'S SENTENCING RECOMMENDATION

The Government respectfully requests that the Court impose a sentence of 180 months' imprisonment and 10 years of supervision. The recommended sentence seeks to balance the clear needs for deterrence and the need to protect the public from Mr. Lee, while also considering his early acceptance of responsibility, as further described below.

### A. Imprisonment and Supervised Release.

The Court employs the U.S. Sentencing Guidelines as "the starting point and the initial benchmark" in imposing its sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). Although the Guidelines are advisory, the Court must "remain cognizant of them throughout the sentencing process." *Id.* at 50 n.6. Indeed, a court may "'rest [its] decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates) in the typical case' if the court finds that the case before it is typical." *United States v. Robinson*, 516 F.3d 716, 718 (8th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 357 (2007)). In addition to considering the Guidelines, § 3553(a) requires the Court to analyze a number of factors, including the nature and circumstances of the offense, the history and circumstances of the defendant, the need for the sentence to reflect the seriousness of the offense, the need for deterrence, the need to protect the public from further crimes of the defendant, and the need to avoid unwarranted disparities. 18 U.S.C. § 3553(a).

A sentence of 180 months of imprisonment—the mandatory minimum sentence— followed by lifetime supervised release, is sufficient, but not greater than necessary, to satisfy the considerations of § 3553(a). It appropriately reflects the seriousness of Mr. Lee's

6

crime, protects society from him, acknowledges his acceptance of responsibility, and affords him the opportunity for much needed treatment and rehabilitation.

In recommending the mandatory minimum sentence, the Government does not intend to minimize the seriousness of the defendant's offense, or the Government's strong interest in protecting minor victims. Mr. Lee is more than a child pornography collector and possessor – he has committed hands-on offenses against minor victims and then produced child pornography depicting his sexual assaults. Minor Victim 1 remembers the abuse she experienced from Mr. Lee, and still to this day is impacted. Mr. Lee chose to victimize Minor Victim 1 and unidentified Minor Victim 2 by not only sexually assaulting them, but also producing depictions of their abuse for his own sexual gratification. The victimization wrought by child pornography is not limited to its production—victims are re-traumatized when the images of their abuse "live on," with the fear that these images could be traded and possessed for sexual gratification by people like Mr. Lee, bringing further embarrassment and stress to the victims.

Minor Victim 1's mother spoke with the undersigned when this case was charged and indicated that she hoped Mr. Lee went to prison for a "long time" as punishment for what he did to her young daughter. The victim's mother also stressed the impact on her family's sense of safety and closeness. She told law enforcement that she was distraught and could not believe something like this would happen to Minor Victim 1. She believed Mr. Lee took advantage of being in town for a family funeral to prey on her daughter, which devastated the family as a whole. A considerable term of imprisonment is necessary

to account for these tragic circumstances, reflect the seriousness of Mr. Lee's offense, and provide just punishment. *See* 18 U.S.C. §§ 3553(a)(1) and 3553(a)(2)(A).

Mr. Lee's history and characteristics also counsel a sentence of 180 months' imprisonment followed by 10 years' supervision. Besides the aforementioned convictions for possession of child pornography in 2022, at 28 years old Mr. Lee has no criminal history. (PSR ¶¶ 33-36.) Mr. Lee is educated and was pursuing a nursing degree in college before he was arrested. With respect to his mental health and emotional conditions, Mr. Lee describes suffering from symptoms of ADHD, anxiety, and depression—many of the same conditions as other defendants who appear before this Court. (*Id.* at ¶ 51.) What sets Mr. Lee apart from many others, however, is that he had family support and resources available to him to address the conditions in a way that could have avoided the continued sexual exploitation of children. Indeed, Mr. Lee is one of the rare cases where he scored a "zero" in his Adverse Childhood Experiences (ACEs) assessment. (*Id.* at ¶ 53.) While it is a struggle to determine if such privilege is an aggravating or mitigating factor, it does denote that Mr. Lee could be rehabilitated under the lengthy mandatory minimum required in these cases.

Further, although a substantial sentence of incarceration is appropriate, the Government acknowledges there are additional mitigating factors. Mr. Lee deserves credit for quickly and unequivocally accepting responsibility for the instant offense. Upon being transported to the District on the present charge, he immediately agreed to plead guilty, thereby saving judicial resources in the form of pretrial motion practice and/or trial.

8

A sentence of 180 months' imprisonment followed by 10 years of supervised release with sex offender conditions strikes the right balance. The mandatory minimum justly punishes Mr. Lee for his illegal conduct, deters him and others from engaging in such conduct in the future, and provides needed protection to the public for the duration of Mr. Lee's sentence. It also provides Mr. Lee with an opportunity to receive prolonged mental health treatment and sex offender programming in a structured environment where Mr. Lee is unable to act on any sexual desire he feels towards children. *See* 18 U.S.C. § 3553(a)(2)(D). However, such a sentence is not greater than necessary to accomplish these ends and is in keeping with the sentences of other similarly situated defendants in this District. *See* 18 U.S.C. §§ 3553(a) and 3553(a)(7).

### B. Amy, Vicky, and Andy Child Pornography Victim Assistance Act ("AVAA") Assessment.

The AVAA created a special assessment for defendants convicted of child pornography crimes. 18 U.S.C. § 2259A(a). These assessments support the Child Pornography Victims Reserve Fund ("CPVRF"), from which some victims can elect to receive compensation in addition to, or in lieu of, restitution owed to them individually. *See* 18 U.S.C. § 2259(d). Congress made clear that its intent in passing the AVAA was "that victims of child pornography be compensated for the harms resulting from every perpetrator who contributes to their anguish." PL 115-299, December 7, 2018, 132 Stat. 4383.

Pursuant to the AVAA, the Court shall order Mr. Lee to pay an assessment of not more than $50,000. 18 U.S.C. § 2259A(a)(3); (*see* PSR ¶ 73.) In determining the amount

to assess, the Court should consider the factors set forth in §§ 3553(a) and 3572. 18 U.S.C. § 2259A(c).

The Government recommends that the Court impose an AVAA special assessment of $5,000 on Mr. Lee. Such an assessment is necessary to ensure that the CPVRF is available to assist the victims of child pornography in what is often a life-long battle to recover. *See* 18 U.S.C. § 3553(a)(7). Although $5,000 represents a financial burden on Mr. Lee, it is not an unjust one, especially since this amount may be collected over time and be adjusted if Mr. Lee's financial circumstances do not allow for payment. *See* 18 U.S.C. §§ 2259A(d)(1), 3572(a)(1), 3572(d). The Government asks that the Court make any AVAA assessment collectable in monthly payments of $100 and order that it come due only after Mr. Lee satisfies his mandatory special assessment under 18 U.S.C. § 3013. *See* 18 U.S.C. § 2259A(d)(2). *See, e.g.*, *United States v. Odegaard*, Case No. 21-cr-272 (PJS) (D. Minn. May 10, 2022) (sentencing judgment for defendant who pled guilty to one count of possession of child pornography pursuant to an Information, in which he was sentenced to a $17,000 AVAA assessment and $5,000 JVTA assessment, in addition to restitution).

    **C.**    **Justice for Victims of Trafficking Act ("JVTA") Assessment.**

Mr. Lee is also subject to a special assessment of $5,000 under the JVTA. 18 U.S.C. § 3014 (amended by PL 117-180, Sept. 30, 2022, 136 Stat. 2133); (*see* PSR at ¶ 72.) Assessments under this statute provide monetary support for the Domestic Trafficking Victims' Fund ("DTVF"), which in turn provides grants and programming that assist victims of human trafficking, child exploitation, and child abuse. *See* 18 U.S.C. §§ 3014(c), 3014(e). Pursuant to the JVTA, the Court must impose this assessment on any "non-

indigent person" convicted of a child exploitation crime, including production of child pornography. 18 U.S.C. § 3014(a)(3). In *United States v. Kelley*, 861 F.3d 790 (8th Cir. 2017), the Eighth Circuit fashioned a standard for assessing "non-indigency." *See id.* at 799-802. It directs courts to look at both a defendant's current assets and his future earning potential. *See id.* at 801-02. Under this standard, Mr. Lee is not indigent, and the assessment should apply.

The Government does not dispute that Mr. Lee is currently indigent. He has no appreciable assets and has been incarcerated for most of 2022 and 2023. However, given Mr. Lee's education, intelligence, and age, Mr. Lee's future earning potential is greater than the average defendant. If the Court imposes the Government's recommended sentence of 180 months, Mr. Lee will be released when he is in his early 40s (or earlier, with good time), with many years of earning potential ahead of him. His past employment records show that he is hard-worker capable of making a decent income, with interruptions only for his education. (*See id.* at ¶¶ 59-60.) Moreover, a $5,000 obligation is not a debt that would significantly impact Mr. Lee's ability to support himself, but is a meaningful amount and necessary to provide support to victims of crimes like those he committed. Assuming the Court imposes the JVTA assessment, the Government asks that it come due only after Mr. Lee satisfies any AVAA assessment and be payable in monthly installments of $100. *See* 18 U.S.C. § 3014(b).

### III. CONCLUSION

For the foregoing reasons, the United States respectfully recommends that the Court impose a sentence of 180 months' imprisonment and a 10-year term of supervised release

with special conditions to follow. The United States further requests that the Court order Mr. Lee to pay AVAA and JVTA special assessments.

Dated: November 26, 2023          Respectfully submitted,

                                  ANDREW M. LUGER
                                  United States Attorney

                                  *s/ Hillary A. Taylor*

                                  BY:  HILLARY A. TAYLOR
                                  Assistant United States Attorney
                                  Attorney ID No. 0398557